# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NIMITZ TECHNOLOGIES LLC, <br><br> Plaintiff, <br><br> v. <br><br> CNET MEDIA, INC., <br><br> Defendant. | C.A. No. 1:21-cv-01247-CFC |
| NIMITZ TECHNOLOGIES LLC, <br><br> Plaintiff, <br><br> v. <br><br> BUZZFEED, Inc., <br><br> Defendant. | Case No. 1:21-cv-01362-CFC |
| NIMITZ TECHNOLOGIES LLC, <br><br> Plaintiff, <br><br> v. <br><br> IMAGINE LEARNING LLC, <br><br> Defendant. | Case No. 1:21-cv-01855-CFC |

| NIMITZ TECHNOLOGIES LLC,<br><br>              Plaintiff,<br><br>v.<br><br>BLOOMBERG L.P.,<br><br>              Defendant. | Case No. 1:22-cv-00413-CFC |
|---|---|

## PLAINTIFF'S OPENING BRIEF ON

## MOTION TO WITHDRAW THE COURT'S MEMORANDUM

## OF NOVEMBER 30, 2022

Dated: December 8, 2022

George Pazuniak (#478)
824 North Market Street, Suite 10001A
Wilmington, DE 19801
Direct: 207-359-8576
gp@del-iplaw.com

Attorney for Plaintiff

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDING ..........................................................1

SUMMARY OF ARGUMENT ..............................................................................1

ARGUMENT .......................................................................................................2

I.   THE DISTRICT COURT HAS NO JURISDICTION ON THE PRESENT RECORD TO
INVESTIGATE COMPLIANCE WITH THE RULES OF PROFESSIONAL CONDUCT AND
THERE IS NO VIOLATION OF ANY RULE ..............................................................2

    *a.   Counsel Did Not Breach The Model Rules*................................................*3*

    *b.   No Inherent Power to Investigate Counsel on Present Facts*...................*5*

    *c.   The Court Would Create Sea Change in Delaware Practice, And Create
a New Body Of Litigation Discovery* ................................................*7*

II.   NIMITZ DID NOT VIOLATE ANY ORDERS ..........................................................7

    *a.   Neither Rule 7.1 nor Standing Order Required  Nimitz to File Any
Disclosure* ................................................................................*7*

    *b.   Nimitz Did Not Engage In Third-Party Non-Recourse Funding*...............*8*

    *c.   Court's Abuse of Discretion* ....................................................*9*

III.   THE COURT MAY NOT INQUIRE INTO "REAL PARTIES IN INTEREST"............10

IV.   NO FICTITIOUS ASSIGNMENTS OR FRAUD ON THE COURT ...........................15

V.   THE COURT'S MEMORANDUM SHOULD BE WITHDRAWN .............................18

VI.   THE COURT IS THE PROSECUTOR AND NOT A NEUTRAL FACTFINDER .........20

CONCLUSION .........................................................................................................21

# TABLE OF AUTHORITIES

<u>CASES</u>

*Arachnid, Inc. v. Merit Indus., Inc.,*
   939 F.2d 1574 (Fed. Cir. 1991)----------------------------------------------------12

*Bank of Nova Scotia v. United States,*
   487 U.S. 250 (1988)----------------------------------------------------------------14

*Caperton v. A. T. Massey Coal Co.,*
   556 U.S. 868 (2009)----------------------------------------------------------------21

*Chambers v. NASCO, Inc.,*
   501 U.S. 32 (1991) -----------------------------------------------------------------6

*Crown Die & Tool Co. v. Nye Tool & Mach. Works,*
   261 U.S. 24 (1923) ----------------------------------------------------------------12

*In re Tutu Wells Contamination Litig.,*
   120 F.3d 368 (3d Cir. 1997) -----------------------------------------------------19

*Jones v. Pittsburgh Nat'l Corp.,*
   899 F.2d 1350 (3d Cir. 1990) ---------------------------------------------------19

*Koon v. United States,*
   518 U.S. 81 (1996) -----------------------------------------------------------------9

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit,*
   507 U.S. 163 (1993)----------------------------------------------------------------13

*Lexmark Int'l, Inc. v. Impression Prods.,*
   816 F.3d 721 (Fed. Cir. 2016) --------------------------------------------------13

*Liteky v. United States,*
   510 U.S. 540 (1994)----------------------------------------------------------------21

*Martin v. Brown,*
   63 F.3d 1252 (3d Cir. 1995) ----------------------------------------------------19

*Meghrig v. Kfc W.,*
   516 U.S. 479 (1996)----------------------------------------------------------------12

*Paradise Creations, Inc. v. U V Sales, Inc.,*
   315 F.3d 1304 (Fed. Cir. 2003)-------------------------------------------------11

*Progressive Nw. Ins. Co. v. Gant,*
   957 F.3d 1144 (10th Cir. 2020)--------------------------------------------------4

*Prosser v. Prosser*,
    186 F.3d 403 (3d Cir. 1999) --------------------------------------------------------- 19

*Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp.*,
    284 F.3d 1323 (Fed. Cir. 2002) (*en banc*)--------------------------------------- 15, 18

*Simmerman v. Corino*,
    27 F.3d 58 (3d Cir. 1994) ----------------------------------------------------------- 19

*Societe Internationale pour Participations Industrielles et Commerciales, S. A. v.
Rogers*,
    357 U.S. 197 (1958)---------------------------------------------------------------- 14

*Taylor v. Taylor Made Plastics*, Inc.,
    565 F. App'x 888 (Fed. Cir. 2014)-------------------------------------------------- 12

*Teleglobe Communs. Corp. v. BCE, Inc.*,
    493 F.3d 345 (3d Cir. 2007) --------------------------------------------------------- 4

*United States v. Wright*,
    913 F.3d 364 (3d Cir. 2019) ------------------------------------------------------- 10

*Univ. of S. Fla. Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A.*,
    19 F.4th 1315 (Fed. Cir. 2021) --------------------------------------------------- 12

*Williams v. Pennsylvania*,
    579 U.S. 1 (2016)------------------------------------------------------------------ 20

STATUTES

28 U.S.C. §455(a) ------------------------------------------------------------------- 20

28 U.S.C. §455(b) ------------------------------------------------------------------- 21

3 Texas Code §101.114---------------------------------------------------------------- 16

35 U.S.C. §100----------------------------------------------------------------------- 11

35 U.S.C. §261----------------------------------------------------------------- 15, 17

35 U.S.C. §281----------------------------------------------------------------------- 11

6 Del.C. §18-303(a) ----------------------------------------------------------------- 16

OTHER AUTHORITIES

1 W. Blackstone, Commentaries *91 ------------------------------------------------21

Model Rules of Professional Conduct of the American Bar Association Rule 1.2 -2,
3, 7

Model Rules of Professional Conduct of the American Bar Association Rule 1.4(b)
-------------------------------------------------------------------------------- 2, 3, 5

Restatement (Third) Of The Law Governing Lawyers §68)-------------------------- 4

Restatement (Third) of the Law Governing Lawyers, §134(2)----------------------- 4

RULES

Fed. R. Civ. P. Rule 17(a)(1) ------------------------------------------------- 11, 18

Fed. R. Civ. P. Rule 7.1------------------------------------------------------- 7, 8

CONSTITUTIONAL PROVISIONS

Constitution Article I, Section 8, Clause 8-----------------------------------------11

Constitution, Fifth Amendment ---------------------------------------------------18

## NATURE AND STAGE OF PROCEEDING

The Court issued a Memorandum Order on November 4, 2022, requiring Plaintiff Nimitz Technologies LLC ("Nimitz") and its counsel to produce their internal and litigation-related documents involving the cases, including privileged documents relating to Nimitz' defense of the on-going inquisition of Nimitz which the Court has been pursuing. (D.I. 27, hereafter "Order").[1]  Nimitz filed a petition with the Federal Circuit Court of Appeals for a writ of mandamus to reverse the Memorandum Order, and the Federal Circuit ordered Defendants to respond and stayed the Order pending resolution.

On November 30, 2022, the Court filed *sua sponte* a "Memorandum" to justify the Order.  (D.I. 32).  On December 8, 2022, Nimitz moved to have the Court withdraw the Memorandum.  This is Nimitz' opening brief in support of its Motion.

## SUMMARY OF ARGUMENT

1.      The Memorandum should be withdrawn because it reflects legally erroneous assumptions and propositions, and the Memorandum's analysis contradicts governing law.

2.      The Memorandum should be withdrawn because (a) the Memorandum is inconsistent with the Federal Circuit Court of Appeals' stay of the Order; and (b)

---

[1]  All D.I. references are to CA 21-1247.

1

the Memorandum was issued *sua sponte* and not in response to any motion or request by either party, where Nimitz and its counsel were denied due process because they were not afforded any notice of the Memorandum or an opportunity to be heard.

## **ARGUMENT**

The Court stated that it required Nimitz and its counsel to produce the various privileged and other confidential internal documents because they are relevant to four "concerns." (Memorandum 75-76). As detailed below, each of the four "concerns" is legally faulty and the Memorandum relying upon such legally erroneous principles should be withdrawn.

### I. **The District Court Has No Jurisdiction On the Present Record to Investigate Compliance With the Rules of Professional Conduct And There Is No Violation Of Any Rule**

The Court asserts the November 4 Order is justified by its "inherent power" to investigate whether counsel complied with Rules 1.2 and 1.4(b) of the Model Rules of Professional Conduct of the American Bar Association ("Model Rules") when counsel undertook Nimitz's representation. (Memorandum 38).

2

### a. <u>Counsel Did Not Breach The Model Rules</u>

Counsel did not breach Rules 1.2 or 1.4 of the Model Rules.  Contrary to the Court's assumption, the Rules do not require that attorney and client directly meet before filing an action.

For well over 100 years, Delaware attorneys have, *inter alia*, represented clients in litigations in Delaware Courts as "Delaware counsel" or "local counsel," particularly in the federal district Court and Delaware's Chancery Court.  The Delaware or local counsel in the vast majority of cases, if not almost all cases, has no direct communications with the client before a complaint, answer or motion is filed beyond executing the retainer agreement with the client.  All other communications are with intermediate agents for the clients, who are usually the clients' out-of-state lead counsel.  At no time has the Delaware Supreme Court, Delaware Disciplinary Counsel or any other responsible body suggested that there has to be direct communications as opposed to communication through an agent.

It does not matter whether the intermediary between the client and counsel is an out-of-state lawyer or a non-lawyer.  In either case, the intermediary is acting as the client's agent in a typical agency relationship.  Thus, the Restatement (Third) of the Law Governing Lawyers specifically provides that an attorney may be guided by a third-party agent for the client, and the does not distinguish between lawyers and non-lawyers as the agents:

3

(2) A lawyer's professional conduct on behalf of a client may be directed by someone other than the client if:

(a) the direction does not interfere with the lawyer's independence of professional judgment;

(b) the direction is reasonable in scope and character, such as by reflecting obligations borne by the person directing the lawyer; and

(c) the client consents to the direction under the limitations and conditions provided in § 122.

Restatement (Third) of the Law Governing Lawyers, §134(2).[2]

Nimitz's managing agent, Mark Hall, confirmed in response to the Court's interrogation during the hearing on November 4, 2022, that he was fully informed as to any potential risks, including the possibility that he would be responsible for "attorney fees to the other side." (Hearing at 69, 71). Mr. Hall testified that he was simply a lay investor. (Hearing 73-74, 77). He wanted and expected Mavexar and counsel to handle actual enforcement work:

Q. And although you are in name the owner of the patent, you defer solely to Mavexar and the lawyers to make all the decisions associated with how the patent is asserted and how cases are settled, fair?

A. Correct.

Q. And that's really the motivation for you as an investor, fair?

A. Correct.

---

[2] The Restatement has been cited as authoritative by the Third Circuit. See *Teleglobe Communs. Corp. v. BCE, Inc.*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting Restatement (Third) Of The Law Governing Lawyers §68). Other courts have specifically cited 134 as authoritative. *Progressive Nw. Ins. Co. v. Gant*, 957 F.3d 1144, 1155 (10th Cir. 2020).

(Hearing 77:7-14).

The above client's interests and expectations are critical in determining compliance with Model Rules:

> The guiding principle is that the lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interests, and the client's overall requirements as to the character of representation.

(Comments to Rule 1.4).

In this case, Nimitz approached counsel through its consulting agent to represent Nimitz in litigation with the expectation that the consulting agent and counsel would handle all aspects of litigation and with Nimitz being merely an investor. Counsel met that client's interest and expectation. Counsel did not violate the Model Rules.

### b. **No Inherent Power to Investigate Counsel on Present Facts**

Counsel did not violate Model Rule 1.2 or 1.4. But even if there was any question, the Court does not have the inherent authority to issue the Order to pursue any such violation. A Court's inherent power has apparently been utilized only in connection with counsel's conduct during an ongoing litigation, and not with respect to any alleged default before the case had been filed which is the Court's allegation here. Moreover, that inherent power has been exercised as disciplinary action against the attorney, and not as punishment of the client as reflected in the Order.

5

There is no basis for the Order here.  The Supreme Court has warned that the power to supervise the professional conduct of attorneys "ought to be exercised with great caution."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).  The Model Rules themselves provide that any breach should be handled as a matter of attorney discipline and breaches do not provide a basis for broader liability:

> [20] Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached.  In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation.  The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct *through disciplinary agencies*.  They are not designed to be a basis for civil liability.  *Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons*.  The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, *does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule*.***

(Emphases supplied).

The Court has not explained how any purported violation of Rules 1.2 or 1.4(b) by counsel justifies the Court's intrusive investigation of Nimitz and its counsel as reflected in the Order, particularly in the face of the Model Rules' own admonition against the Court's prosecution.  The Order is an abuse of discretion because it is inconsistent with the Model Rules and seems to punish the client for alleged default by its counsel.

6

### c.  The Court Would Create Sea Change in Delaware Practice, And Create a New Body Of Litigation Discovery

The Court's interpretation of the Model Rules would necessarily mean that many, if not nearly all, Delaware attorneys who have acted as Delaware counsel have violated the Model Rules.  This follows because Delaware counsel rarely, if ever, consults directly with the client (beyond entering into a retaining agreement) before entering a litigation or thereafter.  All other communications are with, and directions are taken from, another client agent, usually out-of-state lead counsel, which the Court apparently deems insufficient to comply with the Model Rules.

Moreover, given the Court's *imprimatur* that counsel's communications (or lack thereof) are a relevant consideration in litigation, the holding will open the floodgates to new types of discovery.  If the Court has the authority to investigate counsel's compliance with the Model Rules 1.2 and 1.4, then that is necessarily relevant for adversaries to pursue as part of discovery.  The concept is troubling, but the Court must apply its principles equally to all parties.

## II.    Nimitz Did Not Violate Any Orders

### a.  Neither Rule 7.1 nor Standing Order Required Nimitz to File Any Disclosure

The Court is wrong in arguing that Nimitz had been obliged to file a disclosure under Fed. R. Civ. P. Rule 7.1. (Memorandum 9-10).  Rule 7.1 applies only to a "nongovernmental **corporate party**," and does not apply to limited liability companies or LLCs as a matter of law.  Indeed, the Notes of Advisory Committee

7

on the 2022 amendments to Rule 7.1 plainly acknowledge that "a limited liability company" is a "**non**corporate entit[y]," and explain that the 2022 amendments for diversity (and only diversity cases) was required because LLCs were not covered by Rule 7.1.

The district Court's Rule 7.1 Standing Order also did not require any disclosure because it is limited to "nongovernmental joint venture, limited liability *corporation*, partnership, or limited liability *partnership*."  Nothing in the Standing Order requires any disclosure by an LLC which is not named in the Standing Order.

Nevertheless, when the Court raised the issue, and as a prophylactic measure, Petitioner filed a disclosure that correctly identified Mr. Hall as the sole owner/member of Nimitz.  Moreover, Nimitz expressly advised the Court that the Standing Order "does not require disclosure of entities who may have a financial interest in the outcome of the litigation," and the Court never questioned that understanding.  (D.I. 21).

### b.  <u>Nimitz Did Not Engage In Third-Party Non-Recourse Funding</u>

Nimitz was also not required to file any disclosure in response to the Court's "Standing Order Regarding Third-Party Litigation Funding Arrangements."  The Order required disclosure only with respect to non-recourse funding provided in that particular action by a third-party:

arrangements to receive from a person or entity that is not a party (a "Third-Party Funder") funding for some or all of the party's attorney fees and/or expenses to litigate this action **on a non-recourse basis** ….

Nimitz' counsel provided all the funding in the actions and did so on a recourse basis. (Hearing, 43:17-22; 44:8-11). Further, Mr. Hall testified:

> Q. Do you have any reimbursement agreements with anybody to take on any costs that would be incurred as a result of liability?
>
> A. No.

(Hearing 76). Thus, there was no funding which Nimitz had been obliged to disclose. (*Compare* D.I. 22).

### c. **Court's Abuse of Discretion**

Neither the Federal Rules nor the Court's Standing Orders required any party to disclose entities that might have a financial interest in the litigations or might control the actions of the parties. The Court's suggestion that Rule 7.1 or the Standing Orders applied to Nimitz are plainly erroneous, and the Court's reliance thereon constitutes an abuse of discretion. *Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district Court by definition abuses its discretion when it makes an error of law").

The Memorandum's reference to Rule 7.1 and the Standing Orders is erroneous for the same reason, because they cannot justify the Order. The Memorandum should be withdrawn for this reason alone.

9

### III.    The Court May Not Inquire Into "Real Parties In Interest"

The Court justifies the invasive Order as directed to determining whether "there are real parties in interest other than Nimitz, such as Mavexar and IP Edge, which have been hidden from the Court and the defendants?" (Memorandum 76).

Preliminarily, the Court's term "hidden" implies concealing something that would or should otherwise have been disclosed.  As detailed in the prior Section II, however, the Court has not identified any purported "hiding" by Nimitz of anything.  It is unfair and improper to accuse a party in litigation of "hiding" information simply because the party did not voluntarily disclose information that it had no reason or obligation to disclose.

The Court's inquisition into purported "real parties in interest" is not a proper exercise of the Court's inherent authority because the inquisition violates fundamental law that the Court's exercise of its powers "must be in accordance with the Constitution, statutes, and rules."  *United States v. Wright*, 913 F.3d 364, 373 (3d Cir. 2019). As the Third Circuit explained:

> Beginning with the Constitution, a Court must be mindful of its role in our tripartite form of government and the doctrine of separation of powers.  Separation-of-powers principles limit a Court's inherent authority. … [T]he separation-of-powers principle imposes significant limits on it," and "proper regard for judicial integrity does not justify a 'chancellor's foot veto' over activities of coequal branches of government."

*Wright*, *supra* (internal citations omitted).

The Constitution in Article I, Section 8, Clause 8 granted Congress the power to enact laws governing the granting and enforcement of patents.  Beginning with the Patent Act of 1790, Congress exercised that Constitutional authority.  In particular, Congress has provided that only a "patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. §281.[3]  Further, Fed.R.Civ.P. Rule 17(a)(1) provides that "[a]n action <u>must</u> be prosecuted in the name of the real party in interest," and then further defined that:

> The following may sue in their own names without joining the *person for whose benefit the action is brought*: ***

> (G) a party authorized by statute.

(Emphasis added).  The *only* "party authorized by statute" to sue for patent infringement is the patentee or the "successors in title" to the patent.  Moreover, Congress chose not to allow parties that have an interest in a patent, but are not patentees or their successors in title, to be included as parties in patent litigation.

Consistent with this law, Courts have held that "[t]he Patent Act provides that *only* a patentee shall have remedy by civil action for infringement of his patent.'" *Paradise Creations, Inc. v. U V Sales, Inc*., 315 F.3d 1304, 1308 (Fed. Cir. 2003) (emphases supplied, internal quotes omitted); <u>see also</u> *Univ. of S. Fla.*

---

[3] Congress defined the term "patentee" as "includ[ing] not only the patentee to whom the patent was issued but also the successors in title to the patentee." 35 U.S.C. §100.

11

*Rsch. Found., Inc. v. Fujifilm Med. Sys. U.S.A.*, 19 F.4th 1315, 1319 (Fed. Cir. 2021) ("Only a 'patentee' may bring a civil action for patent infringement"); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed. Cir. 2000) ("the profits or damages for infringement cannot be sued for except on the basis of title as patentee, or as such assignee or grantee, to the whole or a part of the patent, and not on the basis merely of the assignment of a right to a claim for profits and damages, severed from such title") (quoting *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 42 (1923) in parenthetical).  Further, "a party is not co-owner of a patent for standing purposes merely because he or she holds an equitable interest in the patent" because "a co-owner must hold **legal title** to the patent." *Taylor v. Taylor Made Plastics*, Inc., 565 F. App'x 888, 889 (Fed. Cir. 2014) (citing *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578-82 (Fed. Cir. 1991) and *Crown, supra*, 261 U.S. at 40-41) (emphasis supplied).

In view of the Constitution and Congressional enactments, only the legal title holder of a patent—the patentee—can sue and is the only real party in interest as a matter of law.  Even if there was a "person for whose benefit the action is brought" or other interested party, such persons are *not* the proper plaintiffs as a matter of law.  Moreover, the principle of "*expressio unius est exclusio alterius*" now denies district Courts any right to demand participation by parties other than the legal patent owner.  *Meghrig v. Kfc W.*, 516 U.S. 479, 488 (1996) ("'It is an

elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a Court must be chary of reading others into it.'"); *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) ("the Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated actions any reference to complaints alleging municipal liability under §1983.").

Every corporation, LLC, partnership or other artificial entity in patent litigation is necessarily ultimately controlled by an individual or group of individuals, and they may be the principals, or they may be agents for yet other persons. Yet, unless the identification of such controlling parties is material to some provision in the Patent Act or Rules, a Court is without authority to inquire as to their identity. As the Federal Circuit has held:

> Congress defines the existence and scope of patent rights. Unless Congress has directed the Courts to fashion governing rules in a particular statutory context (as in, e.g., the Sherman Act), "once Congress addresses a subject, even a subject previously governed by federal common law, the justification for lawmaking by the federal Courts is greatly diminished. Thereafter, the task of the federal Courts is to interpret and apply statutory law, not to create common law."

*Lexmark Int'l, Inc. v. Impression Prods*., 816 F.3d 721, 734 (Fed. Cir. 2016) (internal citations omitted).

13

The Court has no "inherent authority" to conduct such intrusive *sua sponte* inquisitions to pursue irrelevant "real parties in interest."  In conducting an inquisition into Nimitz and its counsel, the Court is establishing its own patent policy that has no support in the Patent Act or in any law, and which renders wrongful conduct that Congress has allowed.  "Inherent authority" does not extend to circumventing the law that Congress chose to enact.  For example in *Societe Internationale pour Participations Industrielles et Commerciales, S. A. v. Rogers*, 357 U.S. 197 (1958), the Court rejected inherent powers as a basis for dismissing a complaint for failure to comply with a production order.  Noting that "reliance upon . . . 'inherent power' can only obscure analysis of the problem," the Court held that "whether a Court has power to dismiss a complaint because of non-compliance with a production order depends exclusively upon Rule 37." *Id*., at 207.

Similarly, in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988), the Court held that a federal Court could not invoke its inherent supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a).

The Court abused discretion in entering the Order, and the Memorandum provides no legal justification for the Court's inquisition.

14

## IV.    No Fictitious Assignments or Fraud On The Court

The Court's final question is "Have those real parties in interest perpetrated a fraud on the Court by fraudulently conveying to a shell LLC the #328 patent and filing a fictitious patent assignment with the PTO designed to shield those parties from the potential liability they would otherwise face in asserting the #328 patent in litigation?"  (Memorandum 76).

The Court's reference to "a fictitious patent assignment" makes no sense under the Patent Law.  In 35 U.S.C. §261, Congress provided that "[t]he Patent and Trademark Office shall maintain a register of interests in patents."  Any interest so recorded is valid even against a bona fide purchaser for value.  *Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp*., 284 F.3d 1323, 1329 (Fed. Cir. 2002) (*en banc)*.

The Court expressed concern that Mavexar or IP Edge had orchestrated the assignment to Nimitz.  (Memorandum 26-27, 43-44, 49).  But the Patent Act is agnostic as to who files the assignment or to whom.  There is no suggestion that the assignment is a forgery or that the assignment was procured by fraud.  As a matter of law, the assignment to Nimitz is not "fictitious," but a valid designation of the legal title holder.

The Court also states that the assignment was "designed to shield those parties from the potential liability they would otherwise face in asserting the #328

15

patent in litigation."   Preliminarily, unless the Court has already decided to sanction Nimitz or its counsel, there are no more opportunities for potential liability in these cases than there are in any other patent infringement case.  Nimitz is the legal title holder of a presumptively valid patent and has presented claim charts demonstrating that each Defendant is infringing at least one claim of the patent, while each Defendant has denied infringement and asserted that the patent claims are invalid—pleadings that occur in virtually every patent case.  The possibility of liability in these cases is no different than any other patent infringement case.

The Court's indictment of Nimitz for allegedly trying to shield itself from potential liability is equally meritless as a matter of law.  Almost all plaintiffs and defendants in patent cases are artificial legal entities such as LLCs which protect the entities' owners from personal liability.[4]   Even if it were true that the assignment to Nimitz was designed to shield parties from the potential liability that they would otherwise face in litigation, the Court has not explained how that is any different with respect to any other patent owner LLC filing a patent infringement action.

---

[4]  State laws expressly exempt the owners and members of **all** LLCs from the personal liability.  See, for example, 6 Del.C. §18-303(a) and 3 Texas Code §101.114.

16

It would be shocking to the Delaware legal community to have a Delaware Court hold that it is evidence of fraud to form an LLC (or corporation or limited partnership or any other artificial entity) in order to protect the owners from liability.  Yet the Court has not accused Nimitz or Mavexar of any other purported wrongdoing.[5]

Even though the Court cannot find any instance where Nimitz violated any law, rule or order, the Court repeatedly accuses Nimitz and its counsel of "fraud." (Memorandum pp. 49, 75, 76, 77).  But "fraud" requires at least some intentional perversion of required truth to induce action or inaction.  Yet the Court has not identified a single instance of Nimitz or its counsel having misrepresented anything or withheld facts when required to disclose.  Nor has the Court pointed to any instance where Nimitz induced any action or inaction by any such alleged perversion of truth.

The Court obviously dislikes Nimitz' business model, but that does not authorize the Court to label lawful conduct a fraud on the Court, and the Court has no inherent authority to pursue an inquisition of such lawful conduct.  35 U.S.C. §261 is particularly relevant because in that statute, Congress allowed unbridled

---

[5]  According to the Secretary of State for Delaware, there are "over 1.8 million legal entities incorporated in Delaware." https://corp.delaware.gov/stats.  In the years 2019-2021, 73.4% (or 247,003) of new entities formed in Delaware were LLCs.  *Id*.

assignments and also provided that "[p]atents shall have the attributes of personal property." *Rhone-Poulenc Agro, supra* ("Congress has specifically provided that patents are to be treated as personal property.")  In these and similar cases, the original patentees had monetized their patents by assigning them for value.  The Patent Act and the Rules now afford the assignee legal title holders the right to enforce those patents in any legal way that it sees fit, and they may do so without disclosing other parties in interest or even in control of the litigations, because, *inter alia*, Congress expressly held that the identification of "the person for whose benefit the action is brought" to be irrelevant.  Rule 17(a)(1).  The Court has no authority to prosecute Nimitz and its counsel for taking actions that individually and collectively are plainly legal and the Court is forbidden to question.

The Court's Order prosecuting such lawful conduct is an abuse of discretion.

## V.  The Court's Memorandum Should Be Withdrawn

The Memorandum should be withdrawn for both procedural and substantive reasons.

First, upon Nimitz' filing of its petition for a writ of mandamus, the Federal Circuit stayed the Order.  (Federal Circuit Document 5).  The Memorandum is an action related to the stay, and, thus, is inconsistent with it.

Second, the Memorandum must be withdrawn because its Memorandum denied Nimitz and its counsel its rights under the Constitution, Fifth Amendment.

The Memorandum effectively sanctions Nimitz and its counsel as the 16,000 words of the Memorandum repeatedly accuse both litigant and counsel of "fraud" on the Court and breaches of ethical conduct.  (Memorandum 49, 75, 76, 77).  That the Court has not technically issued an order with specific sanction does not detract from the fact that Court's charges against the litigant and counsel are in a judicial "Memorandum" and thus judicially already besmirch the reputation of a litigant and its counsel.  Litigant and counsel have already been harmed by the Court's judicial action.

Yet, the Memorandum was issued *sua sponte* without any request or motion by either party, or without any opportunity by Nimitz to address the issues.  A Court's inherent authority does not justify sanctions without affording the attorney and litigant their rights under the Due Process Clause of the Fifth Amendment, including notice and an opportunity to be heard before sanctions are imposed on a litigant or attorney.  *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 379 (3d Cir. 1997); *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994); *Martin v. Brown*, 63 F.3d 1252, 1255 (3d Cir. 1995); *Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990); *Prosser v. Prosser*, 186 F.3d 403, 406 (3d Cir. 1999).

The Memorandum also denies Nimitz and its counsel equal protection as others in similar conditions and circumstances have not been subjected to the Court's

persecution.  As detailed above, the Court has never distinguished these actions

from any other patent infringement action filed by an LLC patent owner.

## VI.    The Court Is The Prosecutor And Not A Neutral Factfinder

To avoid any arguments of waiver or potential prejudice to its positions, Nimitz

responds to page 75 of the Memorandum where the Court suggests that Nimitz can

produce its documents, including its privileged documents, to the Court *in camera*.

The Chief Judge should, respectfully, recuse from further participation in the

case.  It is apparent from the comments at various stages of the Court's inquisition

that the Chief Judge's "impartiality might reasonably be questioned."  28 U.S.C.

§455(a).  The Court has already publicly adjudged Nimitz and its counsel guilty of

fraud and unethical conduct.  One need only consider the Court's comments

regarding counsel's compliance with the Model Rules, and the posed question of

"Have those real parties in interest perpetrated a fraud on the Court by fraudulently

conveying to a shell LLC the #328 patent and filing a fictitious patent assignment

with the PTO designed to shield those parties from the potential liability they

would otherwise face in asserting the #328 patent in litigation?"  Both the

references to the Model Rules and the above question are loaded with assumptions

that demonstrate that the Court has already determined certain critical facts and

law, and, thus, cannot be impartial.  *Williams v. Pennsylvania*, 579 U.S. 1, 8-9

(2016) ("The Court asks not whether a judge harbors an actual, subjective bias, but

20

instead whether, as an objective matter, 'the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'").

Most importantly, the Memorandum repeatedly acknowledges that the Chief Judge has personally (or through his law clerks) investigated Nimitz and its counsel *sua sponte* and without the participation of either Plaintiff or Defendants. The resulting Memorandum bears all the hallmarks of a prosecutorial brief, rife with unfounded accusations of breaches of ethical duties, fraud and other misconduct which were never proposed by any Defendant, and unsupported by any law.  Thus, the Court is both the investigator and the prosecutor, and the law prohibits the Court on such facts from also being the factfinder.  C*ompare Liteky v. United States*, 510 U.S. 540, 555 (1994); *Caperton v. A. T. Massey Coal Co*., 556 U.S. 868, 876 (2009) ("no man is allowed to be a judge in his own cause; because his interest would certainly bias his judgment, and, not improbably, corrupt his integrity"); 1 W. Blackstone, Commentaries *91 ("It is unreasonable that any man should determine his own quarrel").

## **CONCLUSION**

In view of the foregoing facts and law, Plaintiff respectfully requests that the Memorandum be withdrawn.

Respectfully Submitted,

December 8, 2022                          /s/ George Pazuniak
                                          GEORGE PAZUNIAK
                                          824 North Market Street, Suite 1001A
                                          Wilmington, DE 19801
                                          D: (207) 359-8576
                                          gp@del-iplaw.com

                                          *Attorney for Nimitz Technologies LLC*


### Certificate of Compliance

This brief complies with the Standing Order and was prepared in a

proportionally spaced, 14-point font and contains 4,859 words.

                                          /s/ George Pazuniak
                                          George Pazuniak (DE Bar No. 478)