# APPENDIX
# EXHIBIT OO



# THE CHONG LAW FIRM, P.A.
Licensed in:  Delaware, New Jersey, Pennsylvania

### ATTORNEY RETAINER AGREEMENT

This sets forth the agreement (the "Agreement") made this 28th day of March, 2022 (the "effective date" of this Agreement) between Lamplight Licensing LLC (the "Client") and The Chong Law Firm, P.A. ("Firm").  Client and Firm are sometimes hereinafter referred to collectively as the "Parties." Any one of the Parties may be sometimes hereinafter referred to as a "Party."

   1.   **Scope of the Agreement.**  This Agreement concerns litigation and licensing activities with respect to the Patents listed in Exhibit A ("Client Patents") and any patent rights related to the Client Patents, including any divisional, continuation, continuation-in-part, reissue patent, reexamination certificate, or foreign counterpart of any such patent rights that is issued or may be issued as a result of any patent application, reissue application or re-examination (the "Patent Rights"). Client is executing this Agreement for the purpose of retaining Firm to represent it in connection with investigating and asserting claims, including the negotiation of license agreements and the filing and prosecution of lawsuits, against potential and actual infringers of the Patent Rights, (such potential and actual infringers collectively referred to as "Infringers"). Any such claim as to which litigation is filed against Infringers by Firm is referred to herein as a "Lawsuit." Any licensing agreement with Infringers not relating to claims asserted in a Lawsuit which is negotiated by Firm will be referred to herein as a "Licensing Agreement," and any negotiations handled by Firm with Infringers for such a Licensing Agreement will be referred to herein as the "Licensing Negotiations." This engagement will also include representing Client as co-counsel and/or in support of other lead counsel in any *inter partes* review proceeding of the Client patents, if such *inter partes* review proceeding has been or is filed while this Engagement Agreement is in force. This engagement will also include representing inventors of the Client patents.  The Firm's agreeing to provide any additional representation will be in its sole and absolute discretion. Without limiting the foregoing, our engagement will not include any (i) *ex parte* reexamination of any patents, (ii) enforcement of any settlement or judgment, or (iii) tax planning.

   2.   **Client's Patent Rights.**  Client represents and warrants that it owns full, clear and unencumbered title and the exclusive right to enforce all rights with respect to the Client Patents, including, without limitation, the exclusive right to bring actions against others for infringement of the Client Patents, to license and sublicense the Client Patents, and to collect all royalties (past or future), license fees, profits or other revenue or valuable consideration to be paid or exchanged by anyone else for the right to use the Client Patents and other existing Patent Rights.  Client is not aware of any security interest in or claims of equitable title to the Patent Rights. Client agrees not to transfer or assign the Patent Rights, including title to or any interest in or any authority to enforce those rights while this Agreement is in force without notice to Firm.

| WILMINGTON, DE | LANSDALE, PA | PHILADELPHIA, PA |
|---|---|---|
| Delaware Mailing Address | Pennsylvania Mailing Address | No Mail |
| 2961 Centerville Rd. Ste 350 | 100 W. Main St. Ste 420 | 1845 Walnut Street, Suite 1300 |
| Wilmington, DE 19808 | Lansdale, PA 19446 | Philadelphia, PA 19103 |
| T. 302-999-9480 | T. 215-909-5204 | T. 215-909-5204 |

FAX FOR ALL LOCATIONS: 877-796-4627

WWW.CHONGLAWFIRM.COM

3. **Investigation and Initiation of Licensing Negotiations or Lawsuits.** Client and Firm will analyze the Patent Rights and the activities of Infringers. Client, with the assistance of Firm, may conduct Licensing Negotiations for the purpose of obtaining Licensing Agreements with Infringers. Firm, after consultation with and approval of Client, may file a Lawsuit pursuing claims for infringement of the Patent Rights against any Infringer who refuses to enter into a Licensing Agreement, or in advance of Licensing Negotiations if the Parties believe that doing so is in the best interests of Client. For the avoidance of doubt, Client may negotiate license agreements with third parties without the assistance of Firm for which Firm will not receive compensation so long as Firm did not provide any form of assistance. Client may also hire separate legal counsel to assert the Client Patents in the event that Firm refuses to file a case against a given defendant but solely as to that defendant.

4. **Law Firm Authority to Act for Client.** Client hereby appoints Firm as agent to enforce through licensing negotiations and litigation the Patent Rights against the Infringers during the term of this Agreement, except as expressly set forth below. Client authorizes Firm to try, negotiate, compromise, settle, and receive for and in Client's name, all compensation, damages or property to which Client may become entitled by reason of any Licensing Agreement or Lawsuit. Firm agrees not to enter into any Licensing Agreement or Lawsuit settlement with an Infringer without the written consent of Client. Client shall have the sole and exclusive right to approve, accept and enter into any Licensing Agreement or Lawsuit settlement. The Parties also shall provide each other with reasonable notice of any offer made by any Infringer in connection with any Licensing Negotiation or Lawsuit in which Firm is involved. While the client's goals in the litigation will be pursued as directed, Firm reserves the right to exercise, in its professional judgment, as to the means of accomplishing those goals. Including but not limited to granting extensions, continuances or accommodations and other professional considerations.

5. **Mutual Support and Cooperation.** Client agrees to: (1) allow Firm reasonable and timely access to appropriate Client personnel to facilitate the provision of legal services by Firm; (2) to use commercially reasonable efforts to provide Firm with all information and documents in the possession of Client or any entities or persons affiliated with Client reasonably required in connection with the enforcement of the Patent Rights; (3) cooperate with the Firm in the prosecution of any Lawsuit; (4) appear on reasonable notice, any and all depositions and court appearances at which Client's attendance is reasonably required or ordered; (5) comply with all reasonable requests of Firm in connection with the preparation and presentation of any Lawsuit; (6) provide on-going technical and administrative assistance. Firm agrees to make reasonable efforts to keep Client informed as to the status of all Lawsuits. The Parties agree to execute such other documents as might be reasonably necessary or appropriate to consummate and implement the terms of this Agreement.

6. **Compensation to Firm.** Client has requested Firm and Firm has agreed to handle licensing and litigation activities under this Agreement on a contingent fee basis. In other words, Firm's fee will depend upon whether Client recovers any sums by way of licensing, settlement, trial or otherwise solely with respect to the Patent Rights and solely with respect to the Infringers (hereinafter "Gross Cash Sum"). Gross Cash Sum shall be limited to the sums actually received

by Client which are a result of Firm's efforts. As an example, foreign withholding may reduce the amount that is actually received by Client. The term "Net Cash Sum" refers to any sums by way of licensing, settlement, trial or otherwise with respect to the Patent Rights and solely with respect to the Infringers after reimbursement to the firm or Client of Litigation Expenses as defined in Paragraph 10 below. The Firm has advised Client that Firm is willing to charge for its services based on the time spent and the regular hourly rates of each attorney and legal assistant performing services to a client regardless of the outcome. Client has chosen to retain Firm to represent Client on a contingency fee basis in lieu of an hourly rate representation. Accordingly, Firm's fees will be based upon the following contingent fee terms.

The contingent fee for services which will be charged by the Firm in connection with the handling of any claims under this Agreement will be, with respect to Net Cash Sum received from any Infringer as a result of any licenses, negotiations, settlement, sales, assignments, transfers or judgments that involve the Client Patents in whole or in part and that are a result of Firm's efforts.

- Fifteen percent (15%) of the Net Cash Sum received from cases filed by Firm

Firm shall have the right, in its sole discretion, to determine whether it will handle any appeal from any judgment in a Lawsuit against an Infringer.

The fee percentage outlined above shall be computed on the Net Cash Sum actually recovered by Client, after deduction from the Gross Cash Sum of Litigation Expenses (defined below).

(f) Firm is expressly authorized to apply to the Court in any Lawsuit for the maximum amount of compensation, costs and expenses allowed to Client by law ("Attorneys' Fees and Costs"). Any Attorneys' Fees and Costs recovered under this paragraph shall be treated as Net Cash Sum under this Agreement.

(g) All Contingent Attorneys' Fees shall be consistent with the Delaware Rules of Professional Conduct and any other applicable rules. Should any fees be found by a court of competent jurisdiction to be inconsistent with any applicable rules of ethics, the Parties agree that the attorneys' fees due under this Agreement shall not be waived, but shall be restructured so that they are consistent with such rules of ethics.

(h) Any Gross Cash Sums received from an Infringer will be held in Firm's client trust account. The Client's portion shall be distributed within ten business days after receipt of the Gross Cash Sums from an Infringer.

7. **Defense of Counterclaims Involving Patent Rights.** Firm shall defend any counterclaim for declaratory judgment of patent noninfringement, invalidity, unenforceability or other compulsory counterclaim relating to the Patent Rights (hereinafter a "Compulsory Counterclaim") that is asserted against Client by any party who was the subject of any licensing negotiations or litigation involving the Patent Rights at no extra charge to Client.

8.  **Defense of Other Claims & Counterclaims.** Should any party to a lawsuit enforcing the Patent Rights against the party assert a claim or counterclaim against Client other than a Compulsory Counterclaim (hereinafter a "Permissive Counterclaim"), and if Client desires Firm to defend it against such a claim, then Client agrees to compensate Firm for reasonable attorneys' fees for providing such services on an hourly fee basis in accordance with its standard hourly rates in effect at the time such legal services are performed. Firm's billing policies, attached hereto, shall be applicable to the legal services performed by Firm in the defense of such claims or counterclaims. Alternatively, Client may, at its option, retain other counsel to handle the defense of such claims or counterclaims.

9.  **Proceedings Before the Patent and Trademark Office.** In the event that the Patent Rights become subject to any action through the United States Patent Office ("USPTO"), including a request for reexamination, Firm will not represent Client as lead counsel as to those matters before the USPTO, and Client will retain competent patent counsel to represent it in such matters.

10. **Client Payment of Enforcement Expenses.** Client agrees to pay within 10 business days all expenses reasonably incurred in connection with the enforcement of the Client Patents ("Litigation Expenses"). Firm or Client will be reimbursed for all Litigation Expenses prior to distribution of the Net Cash Sum regardless of whether the Litigation Expenses were incurred for the defendant(s) corresponding to the Gross Cash Sum. Litigation Expenses include court filing fees, outside litigation support services, deposition and discovery expenses, investigation costs, expert witness fees, travel and other incidental expenses in connection with Licensing Negotiations and/or the litigation, local counsel costs and fees, Client office space rent, patent maintenance fees, travel expenses, long distance calls, investigation fees, expert and witness fees, electronic imaging, review, processing and hosting of documents (including providing document search capabilities), charts, photographs, deposition fees and costs, court costs, photocopying and other document reproduction costs, postage charges, fax charges, on-line computer research (only if approved by Client prior to incurring), consulting costs, due diligence costs, local counsel costs and fees, financing costs to the extent applicable, costs incurred due to adversarial proceedings before the USPTO, e.g. reexamination, CBM, IPR, etc., and other expenses reasonably incurred in connection with the enforcement of the Client Patents or other Patent Rights.

Litigation Expenses exceeding $500 (e.g. deposition and hearing transcripts and expert witness and consultant fees) will ordinarily be billed directly to the Client by the vendor providing those services. NWM will obtain written pre-approval from the Client for any Litigation Expense expected to exceed $500. NWM will exercise its reasonable judgment and best efforts to limit the Litigation Expenses to only those expenses that it considers appropriate and necessary under the circumstances. Any fee/cost paid is refundable if not earned.

4

11. **No Representation or Warranty by Law Firm.** Each Party specifically recognizes that the other Party has made no representation or warranty whatsoever regarding the probable outcome of the Lawsuit and has in no way guaranteed the result or outcome of nor any recovery from the settlement or trial of the Lawsuit.

12. **Law Firm Association of Other Lawyers or Assignment.** Firm agrees to perform faithfully the duties imposed upon Firm as attorneys for Client in the enforcement of the Patent Rights. Firm may, at the discretion and expense of Firm, associate any other attorney, law firm or other entity, as allowed by law, in the enforcement of the Patent Rights, and may assign all or any part of its interest in the Net Cash Sums to any other such entity, as allowed by law, provided that such assignment shall not increase the cost to Client of any Lawsuit or reduce the interest of Client in the Net Cash Sums. Firm shall also have the right to assign its interest in the Net Cash Sums, as allowed by law, to any other entity, provided that such assignment shall not relieve Firm of any obligation under this Agreement. Client agrees to cooperate with Firm in apportioning Firm's portion of revenues among other professionals who may further the purposes of this Agreement.

13. **Right of Attorneys to Withdraw.** Firm may, at its option and with court approval if necessary, withdraw from any Lawsuit or cease to represent Client for any reason consistent with the Attorneys' ethical and professional obligations. In the event of such withdrawal, Firm shall not be entitled to any compensation for any licensing or litigation services it has provided to Client and the Firm expressly waives its right to pursue any such compensation under any claim or theory including, but not limited to, *quantum meruit*. Notwithstanding anything to the contrary, any compensation to which Firm shall be entitled under this Agreement is limited to compensation solely from Gross Cash Sums, if any. If Firm decides for any reason to withdraw from any litigation, Firm will provide Client a reasonable time to identify and retain replacement counsel.

14. **Termination of Firm.** Client may at any time terminate Firm's representation of Client pursuant to this Agreement. Such termination without cause shall not in any way eliminate or reduce Firm's right to compensation relating to any Net Cash Sums or Costs pending as of the date of termination under this Agreement and the applicable common law. In the event Client discharges Firm for good cause, however, Firm shall not be entitled to receive any fee or other compensation except for any Net Cash Sums owed to Firm as of the date of termination and reimbursement to Firm of Costs incurred through the date that Firm ceases to render services to Client, which shall be reimbursed solely from Gross Cash Sums recovered by Client, if any.

15. **Law Firm Liability after Termination.** If Firm ceases to represent Client pursuant to any provision of this Agreement, then Firm shall no longer be liable to Client or to any third party for any costs or expenses incurred after the date of the termination of Firm's representation.

16.  **Conflicts.** It is possible that some of Firm's present or future clients will have matters adverse to Client or Client's organization while Firm is representing Client. Firm understands that Client has no objection to Firm's representation of parties with interests adverse to Client's and Client waives any actual or potential conflict of interest as long as those other engagements are not substantially related to Firm's services to Client. By agreeing to this waiver of any claim of conflicts as to matters unrelated to the subject matter of Firm's services to Client, Client also agrees that Firm is not obliged to notify Client when Firm undertakes any such representation.

Similarly, new lawyers may join Firm. These lawyers may have represented parties adverse to Client while employed by other law firms or organizations. Firm assumes, consistent with ethical standards, that Client has no objection to Firm's continuing representation of Client notwithstanding Firm's new lawyers' prior professional relationships.

Firm agrees, however, that Client's consent to, and waiver of, such representation shall not apply in any instance where, as a result of Firm's representation of Client, Firm have obtained proprietary or other confidential information of a non-public nature, that, if known to such other client, could be used in any such other matter by such client to Client's material disadvantage or potential material disadvantage.

This will also confirm the Parties understanding that, unless the Parties reach an explicit understanding to the contrary, Firm is being engaged by, and will represent only Client, and no other entity or person in connection with Licensing Negotiations and Lawsuit, unless agreed to by Firm in writing.

17.  **Dispute Resolution.** Client and Firm agree to submit to any disputes arising from this representation to binding arbitration before the Fee Dispute Committee of the Delaware State Bar Association.

18.  **Remedies for Breach.** In the event that any Party hereto shall breach any of the obligations imposed by this Agreement, then a non-breaching Party shall be entitled to pursue a claim for monetary damages as a result of such breach. No Party, however, shall be entitled to recover special, indirect, or consequential damages, including lost profits, from any other Party. For purposes of this paragraph, if Client breaches the Agreement, the compensation to which Firm may be entitled under Paragraph 6 herein is not "special, indirect, or consequential damages, including lost profits."

19.  **Attorneys' Fees in Dispute.** In the event that a Party becomes involved in litigation in connection with any right, obligation, or duty set forth in this Agreement then, and in that event, each Party shall be responsible for paying its own expenses, costs and attorneys' fees incurred by such Party as a result of such litigation.

20.  **Successors and Assigns.** This Agreement is and shall be binding and inure to the

benefit of the Parties and their respective subsidiaries and affiliates, heirs, executors, administrators, and legal representatives.

    **21.** **Governing Law.** It is expressly understood and agreed that this Agreement shall be governed by, construed, interpreted, and enforced in accordance with the laws of the State of Delaware.

    **22.** **Legal Construction.** In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions thereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

    **23.** **Waiver and Integration.** This Agreement constitutes the entire agreement among the Parties and supersedes any prior understandings or written or oral agreement between the Parties respecting the subject matter of this Agreement. This Agreement may not be modified or amended except by a subsequent agreement in writing signed by the Parties. The Parties may waive any of the conditions contained herein or any of the obligations of any other party. Any such waiver shall be effective only if in writing and signed by the Party waiving such condition or obligation.

    **24.** **Required Special Disclosures.**

    (a) CLIENT ACKNOWLEDGES THAT IT WAS ADVISED TO RETAIN INDEPENDENT LEGAL COUNSEL TO REPRESENT CLIENT IN CONNECTION WITH THE NEGOTIATION AND EXECUTION OF THIS AGREEMENT, AND WITH RESPECT TO THE ARBITRATION CLAUSE ABOVE. CLIENT FURTHER ACKNOWLEDGES THAT IT WAS ADVISED THAT FIRM HAS A CONFLICT OF INTEREST THAT PREVENTS IT FROM REPRESENTING CLIENT IN ANY WAY WITH RESPECT TO THE NEGOTIATION AND EXECUTION OF THIS AGREEMENT AND THAT FIRM HAS NOT DONE SO.

    (b) Client acknowledges that prior to signing this Agreement, Client was given the option of retaining Firm to handle the Licensing Negotiations and/or Lawsuit on the basis of a normal hourly rate (plus costs and expenses incurred) but elected instead to retain Firm pursuant to the terms and conditions of this Agreement. Client retains the right to convert this Agreement to an hourly fee agreement for any new litigation filed subsequent to the recovery of fees.

    (c) Client acknowledges that it has been advised that submission to binding arbitration typically results in the waiver of significant rights, including the waiver of the right to file a lawsuit in a different venue, waiver of the right to a jury trial, the possible waiver of broad discovery, and the loss of the right to appeal.

    **25.** **Counterparts.** This Agreement may be executed in multiple counterparts, each one of which will be considered to be an original.

    **26.** **Authority.** The undersigned officer of Client represents that he/she has full authority to enter into and execute this Agreement on behalf of Client.

The Chong Law Firm, P.A.

_____
Signatory, Member

AGREED AND ACCEPTED:

March 28, 2022

Lamplight Licensing LLC

By: _____
Name: _____Sally Pugal_____
Title: _____Managing Member_____

## Exhibit A

US9716393

9